UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG FLEMING,<br><br>    Plaintiff,<br><br>    v.<br><br>IMPAX LABORATORIES INC., et al.,<br><br>    Defendants. | Case No. 16-cv-06557-HSG<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 50 |

In its amended complaint, Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund asserts violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 against Impax Laboratories Inc. ("Impax"), George Wilkinson, Larry Hsu, Bryan Reasons, and Carole Ben-Maimon (collectively, "Defendants"). Plaintiff raises these claims on behalf of itself and others similarly situated: persons who purchased or otherwise acquired publicly-traded Impax securities between February 20, 2014 and January 11, 2017. Dkt. No. 32 ("FAC") ¶ 2. Impax develops, manufactures, and markets generic pharmaceutical products, and develops proprietary products used to treat central nervous system disorders. *Id.* ¶ 3.

Pending before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. *See* Dkt. No. 50 ("Mot."). Plaintiff filed an opposition, Dkt. No. 53 ("Opp."), and Defendants replied. Dkt. No. 56 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS** the motion with **LEAVE TO AMEND**.[1]

---

[1] The Court finds that this matter is appropriate for disposition without oral argument. *See* Civil L.R. 7-1. The relevant facts are set forth in Part II of this order.

## I. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

### B. Heightened Pleading Standards

Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance . . . . " 15 U.S.C. § 78j(b). Under this section, the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). "To prevail on a claim for violations of either Section

10(b) or Rule 10b-5, a plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

At the pleading stage, a complaint alleging claims under Section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, all private securities fraud complaints are subject to the "more exacting pleading requirements" of the PSLRA, which require that the complaint plead with particularity both falsity and scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). With respect to forward-looking statements, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading. *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (quoting *Cutera*, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112–13 (9th Cir. 2010)).

## II. DISCUSSION

Defendants argue that Plaintiff's 180-page amended complaint fails to adequately allege securities fraud stemming from Plaintiff's price fixing and price-erosion claims.[2] In summary, Defendants contend that the FAC, in presenting "a parade of Impax's statements regarding

---

[2] Plaintiff objects to Defendants' request for judicial notice "to the extent that" Defendants seek to establish the truth of the representations in the submitted extrinsic documents. *See* Opp. at 3 n.3. The Court does not rely on extrinsic documents submitted by either party for its order, and **DENIES AS MOOT** the parties' requests for judicial notice. Dkt. Nos. 51, 53; *see also Khoja v. Orexigen Therapeutics, Inc.*, No. 16-56069, 2018 WL 3826298, at \*7 (9th Cir. Aug. 13, 2018) (detailing this circuit's standard for judicial notice in general and as applied to securities fraud pleadings).

competition and compliance," does not satisfy the PSLRA's particularized pleading requirements governing falsity, scienter, and loss causation. The Court turns first to Plaintiff's price fixing allegations.

### A. Price Fixing Allegations

#### i. Materially False or Misleading Statements and Omissions

Defendants argue that Plaintiff fails to present direct or indirect evidence of price fixing sufficient to show that Defendants made false or misleading statements by attributing drug price increases to natural market conditions. To survive this ground for dismissal, Plaintiff must "identify[] the statements at issue and set[] forth what is false or misleading about the statement and why the statements were false or misleading at the time they were made." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

With regard to falsity, that element is alleged "when a plaintiff points to [the] defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 2018 WL 3826298, at *15. A statement is misleading "if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists." *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (quotations and alterations omitted). Misleading statements "must be 'capable of objective verification.'" *Id.* (quoting *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014)).

"Even if a statement is not false, it may be misleading if it omits material information." *Khoja*, 2018 WL 3826298, at *15. "[A]n omission is material when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available." *Markette v. XOMA Corp.*, No. 15-CV-03425-HSG, 2017 WL 4310759, at *7 (N.D. Cal. Sept. 28, 2017) (internal quotations and citations omitted). Omissions are actionable only where they "make the actual statements misleading"; it is not sufficient that an investor "consider the omitted information significant." *Id.*

Irrespective of whether Plaintiff alleges an omission or misstatement, an actionable

4

representation must be material. "For the purposes of a 10b–5 claim, a misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

Plaintiff adequately alleges actionable misstatements with regard to price fixing. Plaintiff alleges that Impax entered into agreements with its competitors beginning in November 2013 to fix the prices of two generic pharmaceutical drugs: digoxin and pyridostigmine bromide ("pyridostigmine"). FAC ¶ 4. According to Plaintiff, Defendants' collusion manifested in two unprecedented price hikes: the first in November 2013, when Impax and its competitor Lannett Company, Inc. ("Lannett") increased generic digoxin prices more than 700% to $1.07 per pill, *id.* ¶¶ 5, 37-69; and the second between December 2014 and March 2015, when Impax and Valeant Pharmaceuticals ("Valeant") raised the price of pyridostigmine by 116% to $1.16 per pill, *id.* ¶¶ 70-77. Plaintiff further alleges that Impax and Lannet "acted in perfect lock-step" by raising digoxin prices within days of each other, and shortly after an industry conference in October 2013. The hike was the "first significant [digoxin] price increase . . . in more than four years since Impax joined the market." *Id.* ¶¶ 39, 42; *see* Opp. at 5. Plaintiff claims that the severity and abruptness of these increases render implausible any non-collusive explanation for the price hikes. *See* FAC ¶¶ 75-76.

In addition, Plaintiff explains why, contrary to Defendants' suggestion at the time, natural market behavior does "not explain the highly correlated and uniform price increase with Lannett that was sustained despite the entrance of new competitors." *Id.* ¶¶ 45, 75-105, 131. Plaintiff sets forth several factors that left the digoxin and pyridostigmine markets structurally susceptible to collusion, including: (1) a high level of market concentration; (2) inelastic demand; (3) the commoditized-nature of digoxin; (4) substantial barriers to entry; and (5) easy information sharing. *See id.* ¶¶ 192-304; *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 719 (S.D.N.Y. 2017) (finding the plaintiffs' price fixing allegations sufficient in part because they "set forth in detail a regulatory regime that has historically pushed the price of Propranolol downwards and gradually reduced defendants' profits, thereby giving them a common motive to conspire");

5

*cf. In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015) (rejecting as inadequate allegations of collusion because the plaintiff's complaint provided "ample independent business reasons why each of the manufacturers adopted and enforced MAP ['Minimum-Advertised-Price'] policies even absent an agreement among the defendant manufacturers").

Considered especially in this context, Plaintiff adequately asserts that Defendants misled investors by attributing the digoxin and pyridostigmine price increases to natural market factors, including competition and sales. *See, e.g.*, FAC ¶¶ 193, 195-198, 202. Plaintiff accordingly claims that Defendants' explanations for the price increases are both internally inconsistent (for instance, when senior officials changed the number of identified Impax competitors from seven to nine) and objectively false (Plaintiff alleges that there were only three digoxin competitors in 2012 and 2013). *See id.* ¶¶ 131, 45. The Court is also satisfied that Defendants' omission of collusive activity is material, as reasonable investors would likely view the disclosure of collusive price fixing as altering the "total mix of information available." *See Markette*, 2017 WL 4310759, at *7.

### ii.  Scienter

In contrast to the FAC's falsity assertions, the FAC's scienter allegations are insufficient to survive Defendants' dismissal motion. Here, the Court conducts an individualized and "holistic review" of the allegations to determine whether they "combine to create a strong inference of intentional conduct or deliberate recklessness." *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (quotations omitted). Even when viewed as a whole, the factual allegations in the amended complaint do not plausibly suggest that individual Defendants directly engaged in unlawful price fixing or approved the allegedly collusive activity. *See* FAC ¶¶ 133-139; *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012) ("Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness."). Plaintiff, for example, does not specifically explain *how* the individual Defendants had personal access to, or control over, digoxin and

pyridostigmine pricing. *See City of Dearborn Heights*, 856 F.3d at 620 (finding scienter allegations insufficient where the plaintiff did not assert that the individual defendants "personally accessed the data room, or that the confidential informants personally disclosed" to the defendants evidence of the fraud). Rather, the FAC expressly attributes actual pricing activity to Impax's "generics team"—not to its senior officials. *See* FAC ¶ 135 (quoting Defendant Chief Executive Officer Wilkinson as attributing Impax's pricing position to the "generic commercial team" having done a "really good job").

To the extent that Plaintiff proceeds on a "core operations" theory, that theory fails for similar reasons. The FAC sets forth that Defendants were senior officials, and by extension, that they must have known about and controlled drug pricing given the timing and severity of the price hikes. *See* FAC ¶¶ 133-139, 362-368. Courts typically hold, however, that temporal proximity and magnitude of price changes do not alone create a strong inference of scienter. *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1077 (C.D. Cal. 2012) (collecting cases and observing that "[i]If intentional misconduct could be inferred solely from declines in share prices or business losses, the PSLRA's heightened pleading requirements for scienter would be rendered meaningless"). And, as discussed, the factual allegations do not suggest that Defendants actually orchestrated or knew of the alleged collusive activity. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) ("General allegations of defendants' 'hands-on' management style, their interaction with other officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient."); *cf. Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, No. CV1602942SJOKSX, 2017 WL 2378369, at *16 (C.D. Cal. May 31, 2017) (accepting the plaintiff's core operations theory where the plaintiff alleged "not only that the[] defendants were in a position to receive information" exposing the alleged fraud, but also that they in fact did receive such information" because they were directly responsible for related operations). The alleged statements instead comprise representations regarding Defendants' willingness to monitor the market, maximize product opportunities, and exploit positive pricing. *See, e.g.* FAC ¶ 138 ("I can't say that – we don't talk specifically about specific products here, but we look at our portfolio regularly, not every single day, and [other] opportunities in the

7

marketplace to take advantage of shortages or increased share or price."), ¶ 139 ("We look at where there may be some market movement that would allow us to take advantage of some price increases, and we've implement[ed] those."), ¶¶365-368. "[T]he more compelling inference" from these statements "is that Defendants made a good faith but mistaken determination" that price increases resulted from natural market conditions. *See City of Dearborn Heights*, 856 F.3d at 621. Given the absence of scienter evidence linked to any alleged misrepresentations, the Court does not find Plaintiff's additional evidence of scienter compelling. *See* FAC ¶¶ 370-388.

### iii. Loss Causation

Even if the Court found that Plaintiff adequately alleged scienter, it concludes that Plaintiff fails to plead loss causation. In assessing loss causation, "the ultimate issue is whether the defendant's misstatement, as opposed to some other fact, foreseeably caused the plaintiff's loss." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016). This inquiry is "context-dependent," and asks "whether a particular misstatement *actually* resulted in loss." *Miller v. Thane Int'l, Inc.*, 615 F.3d 1095, 1102 (9th Cir. 2010) (emphasis in original). Here, Plaintiff claims that class members suffered losses beginning in mid-2015 when partial disclosures revealed Impax's poor financial condition. These disclosures included reports that federal prosecutors might file criminal charges against Impax for unlawfully colluding to fix generic drug prices. *See* FAC ¶¶ 12, 390-401.

As a threshold matter, the mere existence of a regulatory investigation is insufficient to show cognizable fraud. *See Loos v. Immersion Corp.*, 762 F.3d 880, 890 & n.3 (9th Cir. 2014) (observing that an investigation "simply puts investors on notice of a potential future disclosure of fraudulent conduct"). In contrast to the cases on which Plaintiff relies, Plaintiff fails to identify a corrective disclosure by Defendants that is linked to both: (1) the alleged misstatements and omissions regarding digoxin and pyridostigmine pricing; and (2) a decrease in Impax's stock prices. *Cf. Lloyd*, 811 F.3d at 1210-11 (finding loss causation sufficiently alleged where (1) the company's disclosure of a subpoena "caused its stock price to drop precipitously; (2) the market and various analysts perceived the subpoena to be related to [the defendant's] alleged misstatements . . .; (3) the market's fears about the subpoena were confirmed by [the defendant's]

September 9 disclosure that it was writing off $34 million in Garrett loans and categorizing the remainder as non-performing; and (4) the September 9 disclosure's minimal effect on [the defendant's] stock price indicates that the earlier 22% drop reflected, at least in part, the market's concerns about the Garrett loans"). As alleged, the negative market reaction here merely reflects reported financial losses relating to the entrance of new market competitors. *See* FAC ¶¶ 393-396; *Loos*, 762 F.3d at 887-88 (finding that the defendant's disappointing earnings "are merely indicative of poor financial health;" and did not "tend to suggest that the company had engaged in fraudulent accounting practices"); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064 (9th Cir. 2008) ("So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market "understood" a defendant's statement precipitating a loss as a coded message revealing the fraud. . . . Loss causation requires more."). Considering the lack of any disclosure by Defendants suggesting actual fraud that is causally linked with loss, Plaintiff's price fixing allegations fail at this stage.

### B. Price-Erosion Allegations

The FAC's price-erosion allegations relate to two other pharmaceutical products: diclofenac and budesonide. Plaintiff asserts that, to "offset the diminishing returns" on digoxin, Defendants concealed adverse revenue trends and market share erosion on diclofenac, the company's largest product by revenue in 2015. *See* FAC ¶¶ 140-190. Plaintiff alleges that, despite knowing of these negative trends, Defendants misled investors by emphasizing that the company had increased sales of diclofenac, "defended share" of diclofenac, and maintained a positive financial outlook for diclofenac. *Id.* ¶¶ 143-146, 150-168. Plaintiff also asserts that Defendants made additional misleading and/or false statements regarding Impax's purchase of budesonide, as well as other generic drugs, from Teva Pharmaceuticals ("Teva") and Allergan plc ("Allergan"). *Id.* ¶¶ 11, 169-190, 315-317. Plaintiff claims that, despite Defendants' awareness of increased competition and price degradation in the budesonide market, senior officials at Impax falsely represented budesonide's positive financial outlook and easy integration into the company's existing drug portfolio. *See id.*

As alleged, Defendant's diclofenac and budesonide statements are not materially false or

misleading. These representations comprise: (1) objectively verifiable statements regarding drug pricing; and (2) optimistic forward-looking price projections. *See* FAC ¶¶ 305-312 (explaining diclofenac revenue trends and expectations), ¶¶ 315-320 (same for budesonide); *Oregon Pub. Employees Ret. Fund*, 774 F.3d at 606 ("When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation."); *Fisher v. Acuson Corp.*, No. C93-20477RMW(EAI), 1995 WL 261439, at *9 (N.D. Cal. Apr. 26, 1995) ("[E]ven when accompanied by highly positive forecasts, these accurate statements are not misleading because. . . reasonable investors know how to discount the optimism of corporate executives."). Further, Plaintiff fails to present facts suggesting that "Defendants 'did not hold the belief [they] professed and that the belief is objectively untrue.'" *See Markette*, 2017 WL 4310759, at *5 (quoting *City of Dearborn Heights*, 856 F.3d at 616).

With regard to scienter, Plaintiff's price-erosion allegations also fall short. This deficit stems from Plaintiff's failure to clearly delineate any alleged: (1) material misrepresentations; (2) false factual statements within opinion statements; and/or (3) actionable omissions. *See City of Dearborn Heights*, 856 F.3d at 615 (differentiating the "three different standards for pleading falsity of opinion statements"); *Khoja*, 2018 WL 3826298, at *15. It is likewise unclear which individual Defendant made the false opinion statements with the required objective and subjective falsity. This lack of precision prevents the Court from finding that scienter is adequately pled. *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1244 (N.D. Cal. 1998); *In re Sun Microsystems, Inc. Sec. Litig.*, No. C-89-20351-RPA, 1990 WL 169140, at *2 (N.D. Cal. Aug. 20, 1990) ("In evaluating a securities fraud complaint, the proper inquiry in the Ninth Circuit is a statement-by-statement analysis to determine if any particular utterance can be considered false or misleading."); *Schuster v. Symmetricon, Inc.*, No. C9420024RMW, 2000 WL 33115909, at *2 n.2 (N.D. Cal. Aug. 1, 2000) ("This court has previously emphasized the need for clear statement-by-statement analysis in cases of securities fraud."); *Shankar v. Imperva, Inc.*, No. 14-CV-1680-PJH, 2015 WL 5530175, at *9 (N.D. Cal. Sept. 17, 2015) (granting the defendant's motion to dismiss due to the complaint's "lack of precision," concluding that "[w]hile plaintiff has identified some

statements that could give rise to a viable claim. . . the complaint lumps those statements in with statements that are far too vague to be actionable . . . along with statements for which plaintiff has simply not provided enough facts to show that they are false or misleading").[3]

Notwithstanding the FAC's deficiencies, it appears possible that Plaintiff could state its price fixing and price-erosion claims with sufficient specificity. *See id.*; *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (allowing a court to grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts). The Court will therefore provide Plaintiff with an additional opportunity to amend its complaint.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion **WITH LEAVE TO AMEND**. Any amended complaint must include a statement-by-statement analysis of any allegedly actionable statements, and must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 9/7/18

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Because the Court concludes that Plaintiff fails to adequately state falsity and scienter as to its price-erosion theory, the Court does not evaluate whether Plaintiff states loss causation.

11