UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW YORK HOTEL TRADES COUNCIL & HOTEL ASSOCIATION OF NEW YORK CITY, INC. PENSION FUND,<br><br>Plaintiff,<br><br>v.<br><br>IMPAX LABORATORIES INC., et al.,<br><br>Defendants. | Case No. 16-cv-06557-HSG<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 72 |

Lead Plaintiff New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund asserts violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 against Impax Laboratories Inc. ("Impax"), George Wilkinson, Larry Hsu, Bryan Reasons, and Carole Ben-Maimon (collectively, "Defendants"). On April 17, 2018, Plaintiff filed a first amended complaint, raising these claims on behalf of itself and others similarly situated: persons who purchased or otherwise acquired publicly-traded Impax securities between February 20, 2014 and January 11, 2017. Dkt. No. 32 ("FAC") ¶ 2. The Court dismissed the first amended complaint with leave to amend, *Fleming v. Impax Labs. Inc.*, No. 16-cv-06557-HSG, 2018 WL 4616291 (N.D. Cal. Sept. 7, 2018) ("Order"), after which Plaintiff filed a second amended complaint asserting the same claims, Dkt. No. 71 ("SAC").

Pending before the Court is Defendants' motion to dismiss Plaintiff's second amended complaint, briefing for which is complete. Dkt. Nos. 72 ("Mot."), 73 ("Opp."), 76 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS** Defendants' motion **WITHOUT LEAVE TO AMEND**.

//

//

## I. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted). But "where the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotations and alteration omitted).

//

### B. Heightened Pleading Standards

Section 10(b) of the Securities Exchange Act of 1934 provides that it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). Under this section, the Securities and Exchange Commission promulgated Rule 10b-5, which makes it unlawful, among other things, "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To prevail on a claim for violations of either Section 10(b) or Rule 10b-5, a plaintiff must prove six elements: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

"At the pleading stage, a complaint alleging claims under section 10(b) and Rule 10b-5 must not only meet the requirements of Rule 8, but must satisfy the heightened pleading requirements of both [Rule] 9(b) and the Private Securities Litigation Reform Act ('PSLRA')." *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Additionally, all private securities fraud complaints are subject to the "more exacting pleading requirements" of the PSLRA, which require that the complaint plead with particularity both falsity and scienter. *Zucco Partners, LLC*, 552 F.3d at 990. With respect to forward-looking statements, "a defendant will not be liable for a false or misleading statement if it is forward-looking and *either* is accompanied by cautionary language *or* is made without actual knowledge that it is false or misleading." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1141 (9th Cir. 2017) (citing *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112–13 (9th Cir. 2010)).

//

## II. DISCUSSION

Plaintiff's 196-page second amended complaint realleges securities fraud claims based on (1) price fixing, and (2) price erosion. In dismissing the first amended complaint, the Court held that, as to the theory based on price fixing, Plaintiff adequately alleged falsity, but failed to allege both scienter and loss causation. Order at *2–5. As to the theory based on price erosion, the Court held that Plaintiff failed to allege both falsity and scienter, and thus the Court did not consider whether Plaintiff adequately pleaded loss causation. *Id.* at 5.

### A. Price Fixing

The Court previously held that Plaintiff failed to allege both scienter and loss causation as to its price fixing allegations. The Court again finds that Plaintiff has failed to plead loss causation, and thus the Court does not consider whether the operative complaint has cured the defects to its scienter allegations.

The Court previously rejected the FAC's loss causation pleadings for the following reasons:

> As a threshold matter, the mere existence of a regulatory investigation is insufficient to show cognizable fraud. In contrast to the cases on which Plaintiff relies, Plaintiff fails to identify a corrective disclosure by Defendants that is linked to both: (1) the alleged misstatements and omissions regarding digoxin and pyridostigmine pricing; and (2) a decrease in Impax's stock prices. As alleged, the negative market reaction here merely reflects reported financial losses relating to the entrance of new market competitors. Considering the lack of any disclosure by Defendants suggesting actual fraud that is causally linked with loss, Plaintiff's price fixing allegations fail at this stage.

Order at *5 (citations omitted). Again, however, the SAC fails to identify a corrective disclosure linked to alleged misstatements and omissions and a decrease in Impax's stock prices. *See* SAC ¶¶ 450–70. For example, the operative complaint suggests that Impax disclosed on May 11, 2015 "that the DoJ had issued a grand jury subpoena to Impax for four generic medications," but then contends that "[a]nalysts took note," simply because some attributed Impax's "substandard performance" to "'increased competition for digoxin.'" *Id.* ¶¶ 452–54. Even if Impax's statement about the grand jury subpoena constituted a disclosure, the operative complaint itself does not link it to Impax's stock price drop.

4

The remainder of the SAC's loss-causation allegations fall into one of two buckets: either they tie a purported misstatement to stock price decreases, which misunderstands that loss causation is about linking *corrective* disclosures to stock price changes, *see, e.g.*, ¶¶ 459–61; or they characterize disclosures of investigations as corrective disclosures, *see id.* ¶¶ 463–64, which in and of itself fails to prove loss causation under Ninth Circuit law, *see Loos v. Immersion Corp.*, 762 F.3d 880, 890 & n.3 (9th Cir. 2014) (observing that an investigation "simply puts investors on notice of a potential future disclosure of fraudulent conduct").

At the hearing on this motion, Plaintiff's principal argument against *Loos*'s application was that this case is more akin to the Ninth Circuit's more-recent decision in *Lloyd v. CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2017). *See, e.g.*, Dkt. No. 79 at 18:14–19 ("We have -- we have the more that *Lloyd* is -- that *Lloyd* calls for."). The Court disagrees. In *Lloyd*, the Ninth Circuit reaffirmed *Loos*'s core principle that the announcement of an investigation is insufficient to allege loss causation, but found that *Loos* did not preclude loss causation where the announcement of an investigation "related to an alleged misrepresentation" was "coupled with a subsequent revelation of the inaccuracy of that misrepresentation." *Lloyd*, 811 F.3d at 1203. In other words, the "something more" in the *Lloyd* complaint was "a subsequent corrective disclosure by the defendant." *Id.* at 1210. But the operative complaint here nowhere details a "subsequent corrective disclosure" that might convert disclosures of investigations found lacking under *Loos* into the types of disclosures found sufficient in *Lloyd*.[1]

Accordingly, the Court finds Plaintiff has again failed to plead loss causation. And because "Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity," the Court finds that leave to amend is unwarranted. *See Zucco*

---

[1] Plaintiff brought to the Court's attention a recent opinion from the District of New Jersey, which found sufficient similar loss causation arguments presented in a factually similar case: *In re Allergen Generic Drug Pricing Securities Litigation*, No. 16-9449 (KSH) (CLW), 2019 WL 3562134 (D.N.J. Aug. 6, 2019) ("*In re Allergen*"). *See* Dkt. No. 84. As an initial matter, an out-of-circuit district court case is not binding on this Court. More important, although *Allergen* referenced *Loos* and *Lloyd*, it was not bound by those cases' holdings, as is this Court. *See* 2019 WL 3562134, at *13. And the Court cannot square *In re Allergen*'s loss causation conclusion with this binding Ninth Circuit authority. Faced with that tension, the Court must follow *Loos* and *Lloyd*.

5

*Partners, LLC*, 552 F.3d at 1007.

### B. Price Erosion

Plaintiff's price-erosion allegations relate to two pharmaceutical products: diclofenac and budesonide. The Court's previous Order held that the FAC failed to allege (1) a materially false or misleading statement, and (2) scienter. Order at *5. The Court did not consider loss causation. *Id.* at *5 n.3. For reasons detailed below, the Court finds the SAC has not cured the FAC's defects.

#### 1. Diclofenac

The SAC alleges three categories of misrepresentations or omissions related to Defendants' diclofenac sales: (1) statements maintaining annual revenue guidance for 2016 on February 22 and May 10, purportedly when diclofenac revenues were lower than anticipated; (2) statements misrepresenting the extent of diclofenac price and market share declines on May 10 and June 21; and (3) failing to warn that Impax would record a $15 million shelf stock adjustment related to diclofenac sales at the end of Q2 2016 on a June 21, 2016 conference call. SAC ¶¶ 352–97.

The Court finds that Plaintiff again has failed to plead falsity as to diclofenac sales and thus does not consider whether the operative complaint has adequately pleaded scienter.

##### a. Annual Revenue Guidance Statements

On February 22, 2016, Impax offered annual revenue guidance of $990 million. SAC ¶ 353. Impax maintained that guidance on May 10, but lowered it to $910 million on June 21. *Id.* ¶ 371. Plaintiff argues that Impax made the following actionable statement as to the May 10 revenue guidance:

> Growth in the first quarter was driven primarily by the increase in sales from products acquired last year in the Tower transaction and higher sales of select generic products led by diclofenac sodium gel. . . . This morning we are reaffirming our full-year guidance since we continue to expect that growth in 2016 will be driven by . . . steady growth from the majority of our existing generic line and then growth from our branded portfolio.

Opp. at 21 (citing SAC ¶ 366).

6

Defendants argue that this statement falls within the PSLRA's safe harbor, which provides that forward-looking statements accompanied by meaningful cautionary language are not actionable unless a plaintiff proves the statements were made with "actual knowledge" of falsity. Mot. at 19 (citing 15 U.S.C. § 78u-5(c)(1) and *In re Cutera Sec. Litig.*, 610 F.3d at 1111–12). Plaintiff counters that this guidance statement falls outside of the PSLRA safe harbor because it also contained "materially false and misleading statements about past diclofenac performance and current state of 'steady growth' in the generic business." Opp. at 21 (citing *In re Quality Sys.*, 865 F.3d at 1142).

Setting aside whether *In re Quality Systems* supports Plaintiff's position—which the parties dispute—the core flaw in Plaintiff's argument is that the SAC only charges Impax with setting "unreasonable" targets. *See, e.g.*, SAC ¶¶ 369 ("The continued decline could reasonably have been anticipated by defendants as of May 10, 2016."), 372 (arguing that "revenue guidance on May 10, 2016 was unrealistic and defendants lacked a reasonable basis for providing it"). While Plaintiff argues that those targets were unreasonable based on past performance, the same could be true of any such forward-looking statement. But the PSLRA demands more: Plaintiff must have alleged "actual knowledge" of falsity, which it has not done by averring that Impax simply "could have" anticipated a decline in sales. *See* SAC ¶ 369. The Court thus finds that Plaintiff has again failed to plead falsity as to the annual revenue guidance statements.

### b. Statements on May 10 and June 21 Regarding the Extent of Diclofenac Price and Market Share Declines

Plaintiff contends that Impax's market share of diclofenac "remain[ed] at or above 95% . . . during 4Q15 and 1Q16," but fell precipitously from April to August 2016. SAC ¶¶ 362, 369. Plaintiff further contends that diclofenac prices commensurately declined. *Id.* ¶¶ 357–59. Given these changes, Plaintiff alleges that Defendants made several materially false statements regarding diclofenac market trends and its effect on Impax as a whole.

Defendants respond that, as the Court found with respect to the FAC, the SAC's statements on this subject all fall into the following categories: (1) non-actionable puffery, (2) accurate statements of past performance, or (3) non-actionable opinion statements. *See* Mot. at 19–21.

7

Plaintiff counters by relitigating the same points that failed on the first motion to dismiss. *See* Opp. at 21–23. For example, Plaintiff argues that Impax's statements that it "defended share" and that sales were "about on target," do not constitute puffery because they "concealed the true extent and impact of pricing erosions, market shares and volume loss." *Id.* at 22 n.14.

The Court agrees with Defendants that the SAC is not meaningfully different from the FAC, such that there would be any reason for the Court to change its prior holding regarding the falsity of these statements. Presented with no new arguments or factual allegations in the operative complaint, the Court finds that Plaintiff has again failed to plead falsity as to the statements on May 10 and June 21 regarding the extent of diclofenac price and market share declines, for the reasons stated in the Court's prior Order.

        **c.**        **Failing to Warn of $15 Million Shelf Stock Adjustment**

The SAC alleges that Impax hosted a conference call on June 21, 2016, to announce "the acquisition of generic products from Teva and Allergan." SAC ¶ 387. On that call, Impax adjusted its 2016 revenue guidance, citing "lower revenues on diclofenac gel and metaxalone as a result of the impact of additional competition occurring during the second quarter." *Id.* ¶ 388. The SAC alleges that this statement was false, in part, for omitting that Impax was about to record shelf stock adjustments of $15 million. *Id.* ¶¶ 389, 392.

Defendants argue that Plaintiff has failed to "explain why Impax was required to disclose the shelf-stock adjustment," noting that "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." Mot. at 21 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). In response, Plaintiff essentially contends that by disclosing that one reason warranted an adjustment to revenue guidance, Impax led investors to believe that other reasons did not exist. Opp. at 23.

The Court finds Plaintiff has failed to plead falsity as to the shelf stock adjustment. First, Plaintiff fails to prove that Impax had a duty to disclose the adjustment, and cites to no case law for the proposition that disclosing one adverse material fact implicitly denies that any other adverse material fact exists. More important, Plaintiff fails to explain how the shelf stock adjustment revelation made the June 21 statements themselves misleading. It is not enough for

8

Plaintiff to allege that investors later "consider[ed] the omitted information significant." *See Markette v. XOMA Corp.*, No. 15-cv-03425-HSG, 2017 WL 4310759, at *7 (N.D. Cal. Sept. 28, 2017). But that is all Plaintiff contends.

### 2. Budesonide

As was true of the FAC, the SAC alleges that Defendants made misleading and/or false statements regarding Impax's purchase of budesonide, as well as other generic drugs, from Teva and Allergan. Plaintiff claims that, despite Impax's awareness of increased competition and price degradation in the budesonide market, senior officials at Impax falsely represented budesonide's positive financial outlook and easy integration into the company's existing drug portfolio. According to Plaintiff, despite these statements, "months after closing, Impax took a write-down that eviscerated almost half of the asset value, with the bulk of the charge attributed to budesonide." Opp. at 23–24.

As to falsity, Defendants argues that "[t]he SAC fails to allege facts showing that Defendants' initial valuation of the acquisition was objectively or subjectively false, and all of the facts that allegedly contradicted Defendants' opinion statements were publicly available." Mot. at 23. As to scienter, Defendants find "entirely implausible" Plaintiff's theory that "Defendants knew the acquisition was overpriced by $251 million, yet went through with it anyway for no alleged reason." *Id.*

Plaintiff responds that it was at least misleading for Impax to tout that it "used 'all of the data,' 'built[them] into [the] model,' with 'individual valuations on . . . each of the individual products,' and made 'an adjustment in the economics' to account for competition to enable the Company 'to absorb any kind of price alteration and adjustments' relating to budesonide," when Impax did not have certain pricing data. Opp. at 25. As to scienter, Plaintiff claims that the magnitude of the write off proves scienter. *Id.* (citing *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000)).

The Court finds that Plaintiff has again failed to plead scienter and thus does not consider whether Plaintiff has adequately pleaded falsity. As Defendants highlight, Plaintiff's theory relies on the unreasonable assumption that Impax willfully knew that an acquisition was overpriced by

9

$251 million. The far more reasonable—and non-culpable—inference, however, is that Defendants simply overvalued the acquired products. *See* Mot. at 25. Further, Plaintiff's sole authority for its argument that the magnitude of a write-off proves scienter is unavailing. In *Rothman*, the defendants' gross overestimation of *their own performance* resulted in a write-off, which bolstered plaintiff's scienter allegation. 220 F.3d at 92. But overestimating one's own capabilities is categorically different from overestimating the subject of an acquisition. For the latter, there is a far more logical and non-culpable inference—innocent mistake—that is less plausible when a company overstates its own capabilities.

### 3. Price-Erosion Conclusion

For these reasons, the Court finds Plaintiff has again failed to plead (1) falsity as to its price-erosion claims related to diclofenac, and (2) scienter as to its price-erosion claims related to budesonide. And because "Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity," the Court finds that leave to amend is unwarranted. *See Zucco Partners, LLC*, 552 F.3d at 1007.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss **WITHOUT LEAVE TO AMEND**. The clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: 8/12/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge