**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 11 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NEW YORK HOTEL TRADES COUNCIL & HOTEL ASSOCIATION OF NEW YORK CITY, INC. PENSION FUND, Lead Plaintiff, on behalf of itself and all others similarly situated, | No. 19-16744 <br><br> D.C. No. 4:16-cv-06557-HSG |
| Plaintiff-Appellant, | MEMORANDUM[*] |
| and | |
| GREG FLEMING, | |
| Plaintiff, | |
| v. | |
| IMPAX LABORATORIES, INC.; et al., | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted December 9, 2020
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before:  MURGUIA and CHRISTEN, Circuit Judges, and SESSIONS,** District Judge.

Lead plaintiff, New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund, appeals the district court's order dismissing the second amended complaint (SAC) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.  The parties are familiar with the facts and we recite only those necessary to decide the appeal.

We review de novo the district court's order.  *Loos v. Immersion Corp.*, 762 F.3d 880, 886 (9th Cir. 2014).  We accept the SAC's factual allegations as true, but securities fraud claims must meet the exacting pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act (PSLRA), 15 U.S. Code § 78u–4; Fed. R. Civ. P. 9(b); *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007)).  Rule 9(b) requires that a party "state with particularity the circumstances constituting fraud."

1. The district court erred by ruling that plaintiffs failed to allege loss causation on their price-fixing theory.  "Loss causation is shorthand for the

---

** The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

requirement that 'investors must demonstrate that the defendant's deceptive conduct caused their claimed economic loss.'" *Grigsby v. BofI Holding, Inc.*, 979 F.3d 1198, 1204 (9th Cir. 2020) (quoting *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016)). Plaintiffs need only satisfy the "familiar test for proximate cause," *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018) (per curiam) (citing *Dura Pharm, Inc. v. Broudo*, 544 U.S. 336, 346 (2005)), and loss causation "may be shown even where the alleged fraud is not necessarily revealed prior to the economic loss," *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1120 (9th Cir. 2013).

   A. Plaintiffs alleged defendants agreed with co-conspirators to fix prices of generic drugs and strategically cede market share to new market participants. The SAC alleged that although defendants attributed May and August 2015 earnings misses to "the impact of additional competition on generic digoxin," defendants' decreased gross margins and earnings misses were actually due to Impax's concession of market share pursuant to the price-fixing conspiracy's "rules of the road." These allegations suffice to "trace[] the loss back to the very facts about which the defendant lied;" i.e., the anti-competitive market and price-fixing scheme. *First Solar*, 881 F.3d at 753 (citation and internal quotation marks

3

omitted). The district court erred by ruling plaintiffs did not allege causation for the losses following these earnings announcements.

    B. The district court did not err by ruling that plaintiffs failed to allege loss causation regarding the November 2016 and January 2017 losses. The media reports that allegedly formed the basis of the November 2016 losses consisted of speculation about whether the defendants would be indicted as part of the Department of Justice's (DOJ) investigation into price-fixing in the generic drug market. Because "the market [could not] possibly know" whether defendants would be indicted, the decrease in Impax's share price following these media reports could be attributed only to market speculation about the accuracy of the media speculation concerning potential criminal liability. *Loos*, 762 F.3d at 890. "This type of speculation cannot form the basis of a viable loss causation theory." *Id.*

  The SAC also alleged plaintiffs suffered losses in January 2017 following DOJ's intervention in a civil suit involving Impax, and after two executives of a different company entered guilty pleas. However, the SAC also alleged DOJ intervened in numerous civil actions involving different drugs and manufacturers, and did not allege that the executives who pleaded guilty were connected to Impax. Any share-price decrease after these events can be attributed only to market

speculation that price-fixing was pervasive in the generic drug industry. *See Apollo Group*, 774 F.3d at 608 (concluding a report on the defendant's "industry as a whole" did not support loss causation).

    2.  The district court erred by ruling that plaintiffs failed to allege falsity regarding defendants' statements about diclofenac's past performance and defendant's forward-looking earnings projections. A securities-fraud complaint must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Puffery and statements of opinion will not withstand a Rule 12(b)(6) motion to dismiss. *See Apollo Group*, 774 F.3d at 606.

        A.  Plaintiffs alleged defendant Wilkinson stated during a May 2016 earnings call that "overall price decline [in the first quarter of 2016] was around 10%." The SAC alleged that this statement was false and misleading because Impax's "overall portfolio had experienced price decline of 21%" during that time period. The SAC also alleged the statement was false and misleading particularly regarding diclofenac because defendants had suggested diclofenac and one other generic drug accounted for about fifty percent of the overall price decline. But because the overall price decline was more than double the amount defendants stated, the price decline of diclofenac was also more than double the amount

defendants stated.  We conclude these allegations meet the heightened pleading standards applicable to plaintiffs' claims.  15 U.S.C. § 78u-4(b)(1).

        B.  The district court erred by ruling plaintiffs failed to allege the forward-looking revenue guidance was made with actual knowledge of falsity.  Pursuant to the PSLRA's safe harbor, a forward-looking statement is not actionable if it is "accompanied by meaningful cautionary statements" or if plaintiffs fail to allege it was "made with actual knowledge . . . that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1).  The SAC alleged defendants' forward-looking revenue guidance issued in February and May 2016 was premised in part upon false and misleading statements about diclofenac's past performance, including statements by Wilkinson.  The SAC also alleged Wilkinson approved or was informed about all significant price changes in generic drugs, was the sole head of the generic drug business, and repeatedly stressed his "intimate knowledge" of Impax's pricing strategy, models, and forecasts.  Together, these allegations sufficiently allege Wilkinson's statement about diclofenac's price decline, discussed above, was made with actual knowledge of its falsity.  *See In re Quality Systems*, 865 F.3d 1130, 1145, 1149.  Consequently, plaintiffs adequately alleged the forward-looking revenue guidance was made with actual knowledge of its falsity because Wilkinson "had actual knowledge that [his] non-forward looking

6

statements were false and misleading," and it "necessarily follows that [he] also had actual knowledge that [the] forward-looking statements [premised on the non-forward looking statement] were false or misleading." *Id.*

        C.  The district court did not err by ruling that plaintiffs failed to allege falsity regarding the remaining statements. Wilkinson's statements that Impax had "managed [its] portfolio fairly efficiently," and had "defended share," are non-actionable because they "provide[] nothing concrete upon which [plaintiffs] could reasonably rely" and cannot be "true or false on an objective standard." *Apollo Group*, 774 F.3d at 606–07. Moreover, that Impax lost market share does not render the statement that Impax "defended share" false, particularly because the complaint alleges Impax's market share stayed constant in the first quarter of 2016 and had fallen only about 7% at the time Wilkinson made the statement. At oral argument, plaintiffs urged us to conclude the district court erred because the statement concerning "defended share" was materially false and misleading when considered in light of Wilkinson's complete statement that Impax "defended share but had to give up a bit of price." We conclude the SAC does not meet the exacting standards of Rule 9(b) and the PSLRA with regard to this statement because, at the time Wilkinson made the statement, Impax's market share had decreased only 7% and the full extent of the market share decline was

not apparent until after Wilkinson spoke. The SAC failed to allege falsity regarding defendant Wilkinson's statement that Impax managed its portfolio through 2014 and 2015 "without reduction in price," because the statement is not rendered false or misleading by a decrease in revenue during one quarter of that two-year period. Nor did the SAC allege falsity with respect to Wilkinson's statement that sales of diclofenac "normalized" in the first quarter of 2016. Wilkinson acknowledged that revenues were down 35% to 40% in the first quarter of 2016 compared to the fourth quarter of 2015. We conclude plaintiffs' argument that Wilkinson's statement "concealed the evident increasing trend on price and volume" fails because the SAC did not specifically allege what defendant Wilkinson knew of the "trend" at the time he spoke; the SAC instead alleged that the trend continued after Wilkinson stated sales had "normalized."

    3. The district court did not err by ruling that plaintiffs failed to plead scienter regarding the allegedly misleading statements about Impax's acquisition of budesonide. The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *see also Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065–66 (9th Cir. 2008) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). "[I]n determining whether the pleaded

facts give rise to a 'strong' inference of scienter, [a] court must take into account plausible opposing inferences," and a complaint will survive a Rule 12(b)(6) motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

The SAC alleges that defendants knew budesonide revenues were decreasing prior to the acquisition, knew that competition for budesonide was set to increase, and knew that budesonide constituted a large percentage-by-revenue of the acquisition. We conclude the stronger inference to be drawn from these allegations is that defendants simply overvalued the acquisition and underestimated the impacts of future competition. Accordingly, the district court did not err by ruling plaintiffs failed to plead scienter on this theory of liability.

**AFFIRMED IN PART, REVERSED IN PART, REMANDED.**

The parties shall bear their own costs.