1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

GREG FLEMING, et al.,

Case No.  16-cv-06557-HSG

8

Plaintiffs,

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

9

v.

Re: Dkt. No. 110

10

IMPAX LABORATORIES INC., et al.,

11

Defendants.

12
13

Pending before the Court is the unopposed motion for preliminary approval of class action

14

settlement filed by New York Hotel Trades Council & Hotel Association of New York City, Inc.

15

Pension Fund ("New York Hotel Trades Council") and proposed class representative Sheet Metal

16

Workers' Pension Plan of Southern California, Arizona and Nevada ("Sheet Metal Workers'

17

Fund" or the "Class Representative" and together with New York Hotel Trades Council, the "Lead

18

Plaintiffs").[1] Dkt. No. 110 ("Mot.").  The parties have reached a settlement regarding Plaintiffs'

19

claims and now seek preliminary approval.  On October 14, 2021, the Court held a telephonic

20

hearing on the motion.  For the reasons set forth below, the Court **GRANTS** Lead Plaintiffs'

21

motion for preliminary approval of class action settlement.

22

I.    **BACKGROUND**

23

A.    **Factual and Procedural Background**

24

New York Hotel Trades Council asserts violations of Sections 10(b) and 20(a) of the

25
26
27
28

[1] The Court named New York Hotel Trades Council Lead Plaintiff in February 2017.  Dkt. No. 29.
The pending motion for preliminary approval was brought by both New York Hotel Trades
Council and Sheet Metal Workers' Fund.  *See* Mot. at i.  For clarity's sake, the term "Lead
Plaintiffs" as used in this Order refers to both New York Hotel Trades Council and Sheet Metal
Workers' Fund.

United States District Court
Northern District of California

United States District Court
Northern District of California

Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 against Impax Laboratories Inc. ("Impax"), George Wilkinson, Larry Hsu, Bryan Reasons, and Carole Ben-Maimon (collectively, "Defendants").  On April 17, 2018, New York Hotel Trades Council filed a first amended complaint, raising these claims on behalf of itself and others similarly situated: persons who purchased or otherwise acquired publicly-traded Impax securities between February 20, 2014 and January 11, 2017.  Dkt. No. 32 ¶ 2.  The Court dismissed the first amended complaint with leave to amend, Dkt. No. 66, after which New York Hotel Trades Council filed a second amended complaint asserting the same claims, Dkt. No. 71 ("SAC").  On August 12, 2019, the Court dismissed the second amended complaint with prejudice, and New York Hotel Trades Council appealed.  Dkt. Nos. 86-87.

On September 17, 2020, the parties attended an all-day mediation with the Honorable Layn Phillips (Ret.), a mediator with experience in complex securities litigation.  Mot. at 1-3.  Prior to the mediation, the parties submitted mediation statements.  *Id.* at 3.  Though the parties did not reach a resolution at the time, they continued their mediation efforts with the assistance of Judge Phillips.  *Id.*

On January 11, 2021, the Ninth Circuit affirmed in part and reversed in part the Court's dismissal order.  Dkt. No. 89.  On January 25, 2021, Defendants moved for rehearing and rehearing en banc.  App. Dkt. No. 42.  On February 8, 2021, the Sheet Metal Workers' Fund jointly moved with New York Hotel Trades Council to allow the Sheet Metal Workers' Fund to intervene as an additional named plaintiff.  App. Dkt. No. 43.  On March 24, 2021, the Ninth Circuit denied the petition for rehearing and denied the motion to intervene "without prejudice to seek leave to intervene on remand."  App. Dkt. No. 47-48.  On April 1, 2021, the Ninth Circuit's mandate issued.  Dkt. No. 90.

On April 5, 2021, New York Hotel Trades Council and the Sheet Metal Workers' Fund renewed the intervention motion with this Court.  Dkt. No. 93.  Defendants also moved to dismiss the second amended complaint for lack of subject matter jurisdiction.  Dkt. No. 96.  The Court took the motion to intervene, Dkt. No. 93, and the motion to dismiss the second amended complaint, Dkt. No. 96, under submission.  Dkt. No. 108.

On June 26, 2021, Judge Phillips issued a mediator's proposal to settle the action for $33 million. Mot. at 3. The parties accepted the proposal and filed a joint notice of settlement in principle and asked the Court to defer ruling on the motions to intervene and to dismiss. *Id.*; Dkt. No. 109. On July 30, 2021, Lead Plaintiffs filed the pending unopposed motion for preliminary approval of the proposed settlement. Dkt. No. 110. On October 14, 2021, the Court held a hearing on the motion, and the parties agreed to raise the minimum payment for every class member to $10.00. *See* Dkt. No. 116. On October 20, 2021, the parties submitted an amended stipulation of settlement and a supplemental brief explaining the rationale for the proposed *cy pres* recipient. *See* Dkt. No. 118. The parties' initial proposed *cy pres* recipient, however, was "on pause," and the Court expressed concern that the proposed *cy pres* recipient might not exist at the time of the distribution of funds. *See* Dkt. No. 118 at 1; Dkt. No. 120. On October 28, 2021, the parties submitted a second amended stipulation of settlement and a second supplemental brief proposing a new *cy pres* recipient. Dkt. No. 121.

### B.   Settlement Agreement

Following motion practice, an appeal to the Ninth Circuit, and settlement negotiations, the parties signed a stipulation of settlement on July 30, 2021, Dkt. No. 110, Ex. 1 to Decl. of Theodore J. Pintar, which they amended on October 20, 2021, Dkt. No. 118, Ex. A, and on October 28, 2021, Dkt. No. 121, Ex. A ("Second Amended Settlement Stipulation" or "SASS"). The key terms of the Second Amended Settlement Stipulation are as follows:

Class Definition: The Settlement Class is defined as: "all Persons that purchased or acquired Impax common stock or 2% Convertible Senior Notes between February 20, 2014 and August 9, 2016, inclusive."[2] SASS at ¶ 1.4.

---

[2] Under the Second Amended Settlement Stipulation, excluded from the Class are: (i) Defendants; (ii) members of the immediate families of the Individual Defendants; (iii) Impax's subsidiaries; (iv) the officers and directors of Impax during the Class Period; (v) any entity in which any Defendant has a controlling interest; and (vi) the legal representatives, heirs, successors and assigns of any such excluded person or entity. Also excluded from the Class will be any Person who timely and validly seeks exclusion from the Class. The Class definition in the Second Amended Settlement Stipulation differs from the one in the Second Amendment Complaint as it relates to the time period covered, i.e. the Settlement Class covers a shorter period of time, ending on August 9, 2016 rather than January 11, 2017. *See* SASS at ¶ 1.4; SAC at ¶ 1.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       <u>Settlement Benefits</u>: Defendants will deposit $33 million into a "Settlement Fund." *Id.* at ¶¶ 1.33-34, 2.1. After deduction of all taxes, administrative costs, litigation expenses, attorneys' fees, and any incentive award to Lead Plaintiffs for its costs and expenses, the balance (the "Net Settlement Fund") will be distributed to the Settlement Class Members under the Plan of Allocation. *Id.* at ¶ 5.4-5. Defendants shall not have a reversionary interest in the Net Settlement Fund. *Id.* at ¶ 5.9.

       According to the Plan of Allocation, which is defined in the Proposed Notice, at least 95% of the Net Settlement Fund will be allocated to Impax common stock and no more than 5% of the Net Settlement Fund will be allocated to 2% Convertible Senior Notes. Dkt. No. 121, Ex. A-1 ("Proposed Notice") at ¶¶ 28-30. A Recognized Loss Amount will be calculated for each purchase or acquisition of Impax common stock and 2% Convertible Senior Notes during the Class Period according to the formulas set forth in the Plan of Allocation. *Id.* at ¶ 32. The formulas estimate the decline in the stock price – based on when the stock was purchased and sold – that Plaintiffs allege occurred as a result of Defendants' allegedly false statements and omitted material facts during the Class Period. *Id.* A claimant's Recognized Claim is the sum of all the claimant's Recognized Loss Amounts. *Id.* at ¶ 35. The Net Settlement Fund will be distributed on a *pro rata* basis based on the relative size of all the authorized claimants' Recognized Claims. *Id.* at ¶ 36. To calculate each claimant's share, also called a claimant's "Distribution Amount," the claimant's Recognized Claim is divided by the total sum of all Recognized Claims, and this figure is then multiplied by the total amount in the Net Settlement Fund. *Id.* If any claimant's Distribution Amount calculates to less than $10.00, the claimant's Distribution Amount will be increased to $10.00. *Id.*

       If after the initial distribution has occurred Lead Counsel, in consultation with the Claims Administrator, determine that it is cost-effective to make a further distribution, the Claims Administrator shall redistribute the funds remaining after payment of any fees and expenses. *Id.* at ¶ 41. To receive a redistribution payment, a claimant must have cashed their initial distribution check(s). *Id.* These redistribution processes will repeat until not cost-effective given the remaining funds in the Net Settlement Fund. *Id.*

United States District Court
Northern District of California

1     *Cy Pres* Distribution: If (1) any portion of the Net Settlement Fund remains following

2 distribution and any redistributions under the Plan of Allocation; and (2) in the discretion of Lead

3 Counsel in consultation with the Claims Administrator, the remainder is not cost effective or

4 efficient to redistribute to the Settlement Class, then the remaining funds will be contributed to the

5 Investor Protection Trust.  *Id.*

6     Release: Under the Second Amended Settlement Stipulation, all "Released Claims" and all

7 "Released Defendants' Claims" against all "Released Parties" shall be released.  "Released

8 Claims" are defined as follows:

9

10        [A]ny and all claims, rights, liabilities, and causes of action of every
nature and description, including both known claims and Unknown
11        Claims, whether contingent or absolute, mature or unmature,
discoverable or undiscoverable, liquidated or unliquidated, accrued or
12        unaccrued, including those that are concealed or hidden, regardless of
legal or equitable theory, that Lead Plaintiff or any other member(s)
13        of the Class asserted or could have asserted in any forum that both (i)
arise out of, are based upon, or are related in any way to the
14        allegations, transactions, facts, events, matters, occurrences,
disclosures, statements, representations, or omissions referred to in
15        the Action, and (ii) relate to the purchase or acquisition of Impax
common stock or 2% Convertible Senior Notes by the Class during
16        the Class Period.  Notwithstanding the foregoing, "Released Claims"
does not include claims relating to the enforcement of the Settlement

17 SASS at ¶ 1.27.  "Released Defendants' Claims" are defined as follows:

18

19        [A]ll claims and causes of action of every nature and description,
including both known claims and Unknown Claims (as defined
20        below), whether arising under federal, state, common or foreign law,
or any other law, that Defendants could have asserted against any of
21        the Released Plaintiff Parties, including Lead Counsel, that arise out
of or relate in any way to the institution, prosecution, or settlement of
22        the claims in the Action, except for claims relating to the enforcement
of the Settlement.

23     *Id.* at ¶ 1.29.  The "Released Parties," in turn, are "Released Defendant Parties" and

24 "Released Plaintiff Parties."  *Id.* at ¶ 1.30.  "Released Defendant Parties" are defined as

25 Defendants and each and all of their related persons.  *Id.* at ¶¶ 1.26, 1.28.  "Released Plaintiff

26 Parties" are defined as follows:

27

28        [T]he Plaintiffs, each and every Class Member, Plaintiffs' Counsel,
and each of their respective past or present trustees, officers, directors,

partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members.   Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Class.

*Id.* at ¶ 1.31.

Class Notice: Under the Second Amended Settlement Stipulation, a third-party settlement administrator (or "Claims Administrator") will mail notice of the class action settlement and a claim form to all potential class members who can reasonably be identified and located.  Mot. at 21.  To help identify the class members, Defendants will provide the Claims Administrator with lists containing the names and addresses, and email addresses (if available), of record holders of Impax common stock or 2% Convertible Senior Notes during the Class Period, to the extent such lists are reasonably available from Impax's stock transfer agent.  Dkt. No. 110, Attach. 3 at ¶ 5. The Claims Administrator will also notify banks, brokers, and other nominees who may hold the securities at issue on behalf of a beneficial purchaser.  *Id.* at ¶ 6.  The Claims Administrator will ask that the nominees either forward the settlement notice and a claim form to the potential class members or provide the potential class members' names and contact information to the Claims Administrator.  *Id.* at ¶¶ 6-9.  In addition to sending out the notice packets, the Claims Administrator will (1) publish a summary notice in the *Wall Street Journal* and over *PR Newswire*, *id.* at ¶ 11; (2) design and maintain a website ([www.ImpaxSecuritiesSettlement.com](www.ImpaxSecuritiesSettlement.com)) with information for potential class members, *id.* at ¶ 12; (3) establish and staff a toll-free telephone number and email address to answer questions about the settlement, *id.* at ¶ 13; and (4) send the Depository Trust Company a notice and claim form to publish on its Legal Notice System, *id.* at ¶ 8.

Opt-Out Procedure: If the settlement is approved by the Court, any member of the Settlement Class who does not submit a timely written request for exclusion will be bound by the terms of the Second Amended Settlement Stipulation and by any judgment or determination affecting the Settlement Class.  Proposed Notice at ¶ 52.  Settlement Class Members can opt out

United States District Court
Northern District of California

by submitting a valid and timely written request via first-class mail to the Claims Administrator, which request must include "the number of shares of Impax common stock or the 2% Convertible Senior Notes that the Person requesting exclusion (i) owned as of the opening of trading on February 20, 2014; and (ii) purchased, acquired and/or sold from February 20, 2014 through August 9, 2016, inclusive, as well as the number of shares, dates and prices for each such purchase, acquisition and sale." *Id.* at ¶ 56. All persons who submit valid and timely requests for exclusion will not be eligible to receive any benefit from the Settlement but will retain the right to be a part of any other lawsuit against any of the Released Defendant Parties with respect to any of the Released Claims. *Id.* at ¶ 54. The notice sent to Settlement Class Members will note the date by which the exclusion request must be received by the Claims Administrator, and the parties suggest this date be set at twenty-one days prior to the Final Approval Hearing. Dkt. No. 110, App. A at 5.

Incentive Award: According to the Second Amended Settlement Stipulation, Lead Plaintiffs may submit an application for an award from the Settlement Fund pursuant to 15 U.S.C. § 78u-4(a)(4) in connection with their representation of the class. SASS at ¶ 6.1. In their motion for preliminary approval, Lead Plaintiffs state they intend to request an amount not to exceed a total of $15,000. Mot. at 4.

Attorneys' Fees and Costs: The Second Amended Settlement Stipulation states that any attorneys' fees and expenses, as awarded by the court, shall be paid from the Settlement Fund. SASS at ¶ 6.1-2. Lead Plaintiffs' motion for preliminary approval states that Lead Counsel will request (a) an award of attorneys' fees not greater than 30% of the Settlement Amount, (b) payment of expenses or charges resulting from the prosecution of the Action not in excess of $250,000, and (c) interest on such amounts at the same rate and for the same period as earned by the Settlement Fund. Mot. at 4.

### C. Supplemental Agreement

The parties reference a confidential supplemental agreement as part of the class action settlement. SASS at ¶ 7.3. The supplemental agreement details the conditions under which Defendants may terminate the settlement if the number of requests for exclusion from the

settlement class exceed a certain threshold.  *See id.*; *see also* Mot. at 4.

As directed by the Court during the preliminary approval hearing, the parties submitted the supplemental agreement for in camera review on October 15, 2021.

## II.  PROVISIAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011).  Class certification is a two-step process.  *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met:  numerosity, commonality, typicality, and adequacy of representation.  *Id.* at 349.  *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met.  Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*").  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id.*  However, this concern is not present in certifying a settlement class.  *Id.* at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id.* at 557.

### A.  Rule 23(a) Certification

#### i.  Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable."  The Court finds that numerosity is satisfied here because as of August 4, 2016, the start of the Class Period, there were 73,859,323 Impax common shares outstanding.  Mot. at 17.  Joinder of potentially hundreds of thousands of class members would be impracticable.

#### ii.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  A

United States District Court
Northern District of California

contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350.  Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350.  Even a single common question is sufficient to meet this requirement.  *Id.* at 359.

Common questions of law and fact in this action include (1) whether Defendants' alleged misrepresentations and omissions violated the Exchange Act and/or were materially false and misleading, (2) whether Defendants acted knowingly or recklessly, (3) whether the individual Defendants controlled Impax and its alleged violations of the securities laws, (4) whether the market prices of Impax common stock and 2% Convertible Senior Notes were artificially inflated as a result of Defendants' alleged misrepresentations and omissions, (5) whether Defendants' alleged misrepresentations and omissions caused class members to suffer a compensable loss, and (6) whether class members have sustained damages, and the proper measure of damages. Although the amount to which each class member is entitled will differ, the issues described above are common to the proposed Settlement Class.  Accordingly, the Court finds that the commonality requirement is met in this case.

### iii.    Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).  That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

United States District Court
Northern District of California

1   Here, the Court finds that Sheet Metal Workers' Fund's claims are both factually and

2   legally similar to those of the putative class.  Sheet Metal Workers' Fund alleges that both it and

3   other class members acquired Impax securities during the Class Period at artificially inflated

4   prices due to Defendants' misstatements and omissions, and were damaged when the truth

5   emerged.  Mot. at 18; *see also* SAC at ¶ 1, 448-49.  These similarities satisfy the typicality

6   requirement.

7       **iv.**    **Adequacy**

8   Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

9   the interests of the class."  The Court must address two legal questions: (1) whether the named

10   Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether

11   the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.

12   *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).  This inquiry "tend[s] to

13   merge" with the commonality and typicality criteria.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

14   147, 158 n.13 (1982).  In part, these requirements determine whether "the named plaintiff's claim

15   and the class claims are so interrelated that the interests of the class members will be fairly and

16   adequately protected in their absence."  *Id.*

17   The Court is unaware of any actual conflicts of interest in this matter and no evidence in

18   the record suggests that either Sheet Metal Workers' Fund or Lead Counsel have a conflict with

19   other class members.  In early 2021, the New York Hotel Trades Council, which has vigorously

20   prosecuted this action on behalf of the class and was previously named Lead Plaintiff by the

21   Court, jointly moved with Sheet Metal Workers' Fund to allow Sheet Metal Workers' Fund to

22   intervene as an additional named plaintiff, both before the Ninth Circuit and before this Court.

23   App. Dkt. No. 43; Dkt. No. 93.  Sheet Metal Workers' Fund's interests are directly aligned with

24   the interests of other class members, as both purchased Impax Securities during the Class Period

25   and suffered losses as a result of Defendants' alleged misconduct.  As the Court has previously

26   recognized, Lead Counsel have extensive experience with complex securities litigation, including

27   as lead counsel in PSLRA cases litigated in this district, and have been praised by numerous

28   judges for the quality of the firm's representation in class action litigation.  Dkt. No. 29 at 4.  The

1     Court finds that Lead Counsel have prosecuted this action vigorously on behalf of the class to date

2     and will continue to do so.  The adequacy of representation requirement is therefore satisfied.

3     **B.**     **Rule 23(b)(3) Certification**

4     To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3).  First,

5     "questions of law or fact common to class members [must] predominate over any questions

6     affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  And second, "a class action [must

7     be] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*

8     **i.**     **Predominance**

9     The "predominance inquiry tests whether proposed classes are sufficiently cohesive to

10     warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

11     (2016) (quotations omitted).  The Supreme Court has defined an individualized question as one

12     where "members of a proposed class will need to present evidence that varies from member to

13     member."  *Id.* (quotations omitted).  A common question, on the other hand, is one where "the

14     same evidence will suffice for each member to make a prima facie showing [or] the issue is

15     susceptible to generalized, class-wide proof."  *Id.* (quotations omitted).

16     Here, the Court concludes that, for purposes of settlement, common questions raised by

17     Lead Plaintiffs' claims predominate over questions affecting only individual members of the

18     proposed class.  Lead Plaintiffs allege that both they and other class members acquired Impax

19     securities during the Class Period at artificially inflated prices due to Defendants' misstatements

20     and omissions, and were damaged when the truth emerged.  Mot. at 18; *see also* SAC at ¶ 1, 448-

21     49.  The Court finds that whether Defendants violated the Exchange Act, made misrepresentations

22     and omissions that were materially false and misleading, acted knowingly or with deliberate

23     recklessness, and caused damages to the Settlement Class are all questions susceptible to

24     generalized, class-wide proof.  And although class members will need to rely upon individual

25     evidence to some extent to calculate their individual damages, the "mere fact that there might be

26     differences in damage calculations is not sufficient to defeat class certification."  *Hyundai II*, 926

27     F.3d at 560 (quotations omitted).  Therefore, the Court finds the predominance requirement is met

28     for purposes of provisional class certification.

United States District Court
Northern District of California

### ii.    Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors:  (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them.  Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### C.    Class Representative and Class Counsel

Because the Court finds that Sheet Metal Workers' Fund meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Sheet Metal Workers' Fund as Class Representative.  When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B).  Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Lead Counsel have efficiently investigated and litigated this case.  As the Court explained in the order appointing Robbins Geller Rudman & Dowd LLP as Lead Counsel, the firm has extensive experience as lead counsel in securities class actions.  *See* Dkt. No. 29.  Accordingly, the Court appoints Robbins Geller Rudman & Dowd LLP as Class Counsel.

### III.    PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A.    Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (citations and quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d

1011, 1026 (9th Cir. 1998).

**B.   Analysis**

**i.   Evidence of Conflicts and Signs of Collusion**

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

**a.   Attorneys' Fees**

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient. *See* SASS at ¶ 5.9. It also does not contain a clear sailing provision and is not conditioned on any award of attorneys' fees or expenses. *See id.* at ¶ 6.1-3; Mot. at 5. Any attorneys' fees will be paid from the Settlement Fund itself. *See* SASS at ¶ 6.1.

Lead Counsel intends to request an attorneys' fee award no greater than 30% of the settlement amount ($9,900,000) and reimbursement of its costs and expenses not to exceed $250,000. *See* Mot. at 4. When deciding to award attorneys' fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

The Court recognizes that Lead Counsel obtained significant results for the prospective class members, as discussed below in Section III.B.iii. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class. *Cf. Roes*, 944 F.3d at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were

to award 30% in attorneys' fees, the majority of the monetary settlement would still be distributed to class members.  Given the motion practice in this case so far and the successful appeal of the dismissal of the second amended complaint with prejudice, the Court finds that it is reasonable for Lead Counsel to indicate that they will request an attorneys' fee no greater than 30% of the settlement amount.  The Court is cognizant of its obligation to closely review class fee awards and at the final approval stage will scrutinize the record to determine what attorneys' fees award is appropriate in this case.  Accordingly, given that Counsel will not request a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court finds that this factor does not weigh against preliminary approval.

### b. *Cy Pres* Distribution

The Court must also evaluate whether the proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865.  "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted).  That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted).  A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it."  *Id.* (quotation omitted).

Here, the parties intend to select the Investor Protection Trust as its *cy pres* recipient.  *See* Proposed Notice at ¶ 41.  The Investor Protection Trust is a 501(c)(3) non-profit dedicated to investor education and protection.  Dkt. No. 121 at 1.  The primary mission of the Investor Protection Trust is "to provide independent, objective information needed by consumers to make informed investment decisions."  *Id.*  The organization also provides online tools and information "to help investors recognize and avoid investment fraud and financial exploitation."  *Id.*  The Court preliminarily finds that the Investor Protection Trust shares the interests of the class members in protecting investors and preventing fraud.  Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Class.

### ii.    Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member.  The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations."  *In re Bluetooth*, 654 F.3d at 947.  For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives."  *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although Lead Plaintiffs intend to seek awards not to exceed $15,000 in the aggregate, the Court ultimately will determine whether Lead Plaintiffs are entitled to such an award and the reasonableness of the amount requested.  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action."  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiffs must provide sufficient evidence to allow the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'"  *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award requests.  Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval.  *See Rodriguez*, 563 F.3d at 958.

### iii.    Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Lenovo*, 2018 WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total value of the settlement offer is $33 million.  SASS at ¶ 1.33, 2.1.  Lead Plaintiffs contend that this amount represents 12.5% of the class's estimated reasonably

recoverable damages.  Mot. at 10.  The Court agrees with Lead Plaintiffs that this recovery is in a range consistent with the median settlement recovery in class actions.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 n.2. (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions"); Mot. at 10.  Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Lead Plaintiffs also explain the risks they would face in continuing to litigate this case. For example, Lead Plaintiffs note that Defendants dispute that their alleged misstatements were false, that any misstatements were made with scienter, and that any misstatements caused compensable damages to the class.  *See* Mot. at 9-10; Proposed Notice at ¶ 18.  And Lead Plaintiffs explain that Defendants are of the view that recoverable damages are significantly lower than Lead Plaintiffs' projection.  *See* Mot. at 10.  Moreover, Lead Plaintiffs note the risks in prevailing at summary judgment, pretrial motions, trial, and subsequent appeals in a complex case that is likely to be expensive and lengthy to try.  *See id.*  Even if Plaintiffs were to prevail, their recovery—after class certification, trial, and appeals—could come years in the future.  The Court finds that, given these risks, the settlement amount also weighs in favor of granting preliminary approval.

### iv.    Fairness of Supplemental Agreement

The Court must also review the fairness of the parties' confidential Supplemental Agreement.  *See* S.A. ¶ 12.2.  The existence of a termination option triggered by the number of class members or shares that opt out of the Settlement does not by itself render the Settlement unfair.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018).  Having reviewed the Supplemental Agreement, the Court concludes that the termination provision is fair and reasonable.

### v.    Obvious Deficiencies

The Court also considers whether the Second Amended Settlement Stipulation has obvious

United States District Court
Northern District of California

United States District Court
Northern District of California

1    deficiencies.  The Court finds no obvious deficiencies and therefore finds that this factor weighs in

2    favor of preliminary approval.

3                                          *       *       *

4           Having weighed the relevant factors, the Court preliminarily finds that the Settlement

5    Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court

6    **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when

7    submitting their motion for final approval.

8    **IV.     PROPOSED PLAN OF ALLOCATION**

9           The Court also must preliminarily approve the Plan of Allocation.  Such a distribution plan

10   is governed by the same legal standards that apply to the approval of a settlement: the plan must

11   be fair, reasonable, and adequate.  *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d

12   1152, 1154 (N.D. Cal. 2001).  "A settlement in a securities class action case can be reasonable if it

13   fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also

14   sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses

15   of class members' individual claims and the timing of purchases of the securities at issue." *Vinh*

16   *Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6,

17   2014) (quotation omitted). "[C]ourts recognize that an allocation formula need only have a

18   reasonable, rational basis, particularly if recommended by experienced and competent counsel."

19   *Id.*

20          The Plan of Allocation here uses a "recognized loss" value that tailors the recovery of each

21   class member to the timing and sale of Impax securities during periods of alleged artificial

22   inflation and corrective disclosures, as well as the number of shares at issue in each class

23   member's claim.  *See* SASS at ¶ 5.8; Proposed Notice at ¶¶ 28-43.  The Settlement Fund will be

24   distributed on a *pro rata* basis according to each class member's recognized loss.  The Court

25   therefore finds that the Plan of Allocation treats the class members fairly and preliminarily

26   approves it.

27   **V.     PROPOSED CLASS NOTICE PLAN**

28          For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that

                                                      18

is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;
(ii)    the definition of the class certified;
(iii)   the class claims, issues, or defenses;
(iv)    that a class member may enter an appearance through an attorney if the member so desires;
(v)     that the court will exclude from the class any member who requests exclusion;
(vi)    the time and manner for requesting exclusion; and
(vii)   the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

As an initial matter, Lead Plaintiff asks the Court to approve the appointment of JND Legal Administration ("JND") as Claims Administrator. *See* Mot. at 3; Dkt. No. 110, Attach. 3 at ¶ 1-2. The Court finds that JND has extensive experience implementing notification and claims administration programs in class actions and approves its appointment as Claims Administrator in this case. *See* Dkt. No. 110, Attach. 3 at ¶ 3.

Lead Plaintiffs next ask the Court to approve its class notice plan. Under this plan, JND will mail a copy of the Notice and Claim Form (together, the "Notice Packet") to all potential class members who can reasonably be identified and located. Mot. at 21. To help identify the class members, Defendants will provide the Claims Administrator with lists containing the names and addresses, and email addresses (if available), of record holders of Impax common stock or 2% Convertible Senior Notes during the Class Period, to the extent such lists are reasonably available from Impax's stock transfer agent. Dkt. No. 110, Attach. 3 at ¶ 5. JND will mail a copy of the Notice Packet to all persons and entities identified as potential class members by Impax's stock transfer agent within twenty (20) calendar days of the Court's preliminary approval of the Settlement. *Id.* The Court understands that most class members are likely beneficial purchasers whose securities were purchased by banks, brokers, and other nominees who may hold the

United States District Court
Northern District of California

1   securities at issue in the name of the nominee on behalf of the beneficial purchaser.  *Id.* at ¶ 6.

2   Accordingly, JND will also mail a copy of the Notice Packet to approximately 4,000 nominees

3   based on JND's proprietary database listing names, mailing addresses, and email addresses of

4   banks, brokers, and other nominees (the "Nominee List").  *Id.*  JND will instruct the nominees to

5   either (a) forward the Notice Packet to potential class members or (b) provide the names,

6   addresses, and, if available, email addresses of potential class members to JND so that JND may

7   forward the Notice Packet directly.  *Id.*  JND will follow-up with the largest nominees on the

8   Nominee List to prompt them to take the requested action.  *Id.* at ¶ 7.  For any Notice Packets that

9   are returned as undeliverable, JND will check for alternative or updated addresses with the U.S.

10  Postal Services or through a third-party vendor to which JND subscribes.  *Id.* at ¶ 10.  Notice

11  Packets will be re-mailed where updated or alternative addresses are available.  *Id.*

12  JND attests that this process is "similar to notice plans typically utilized for securities class

13  action settlements."  *Id.* at ¶ 14.  JND notes that, in securities class actions, corporate entities often

14  do not know the identity of all their shareholders because many shareholders are beneficial

15  purchasers whose securities are held by a nominee.  *Id.* at ¶ 15.  Despite this limitation, JND

16  believes, based on its experience administering settlements of similar size involving companies

17  with similar market capitalizations, that it will mail approximately 40,000 Notice Packets.  *Id.*

18  JND will also maintain a case-specific website dedicated to this settlement, publish a summary

19  version of the notice in *The Wall Street Journal* and *PR Newswire*, establish a toll-free number and

20  dedicated email address, and send the Depository Trust Company a Notice and Claim Form to

21  publish on its Legal Notice System.  *Id.* at ¶¶ 8-13.  The Court finds that the proposed notice

22  process is "reasonably calculated, under all the circumstances, to apprise all class members of the

23  proposed settlement."  *Roes*, 944 F.3d at 1045 (quotation omitted).

24  The Court also finds that the content of the proposed notice describes the information

25  required by Federal Rule of Civil Procedure 23.  The parties have attached a copy of their

26  proposed class notice, which includes the proposed notice that will be mailed to the class

27  members, the Proof of Claim Form that will be mailed to the class members, and the Summary

28  Notice that will be published in *The Wall Street Journal* and transmitted over *PR Newswire*.  *See*

United States District Court
Northern District of California

Proposed Notice.  Among other things, the proposed notice apprises class members of the nature of the Action, the definition of the Settlement Class to be certified, the class claims and issues, and the claims that will be released.[3]  And it does so in plain, easily understood language.  The Court therefore finds that the content of the proposed notice provides sufficient information about the case and conforms with due process requirements.  *See Hyundai*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (citation and quotations omitted)).

## VI.    CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after | |

[3] Additionally, the Notice: (1) describes the Settlement, Settlement amount and potential recovery both on an aggregate basis and an average per-share basis; (2) explains that the parties disagreed regarding whether any damages were recoverable and includes a brief description of why the parties are proposing the Settlement; (3) includes a brief description of the maximum amount of fees and expenses that Lead Counsel will seek; (4) describes the Plan of Allocation; (5) advises of the binding effect of a Judgment on Settlement Class Members under Rule 23(c)(3); (6) advises that a Settlement Class Member may enter an appearance through counsel if desired; (7) states that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadline for doing so); (8) describes how to object to the proposed Settlement and/or requested attorneys' fees and litigation expenses and/or the request for an award to Lead Plaintiffs for its costs and expenses; (9) describes how to make a Claim; (10) provides the names, addresses and telephone numbers of Lead Counsel and the mailing address of the Claims Administrator; (11) includes instructions on how to access the case docket via PACER or in person at the court; (12) will state the date, time and location of the Final Approval Hearing, states that the date may change without further notice to the Settlement Class, and advises Settlement Class Members to check the settlement website or the Court's PACER site to confirm that the date has not been changed; and (13) will include the deadlines for submitting Claim Forms, opting out of the Settlement, and objecting to the Settlement, the Plan of Allocation, Lead Counsel's requested attorney's fees and litigation expenses, or the request for awards to Lead Plaintiffs for costs and expenses.  *See* Proposed Notice.

| | |
|---|---|
| the filing of the motions for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated:  11/22/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge