UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG FLEMING, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>IMPAX LABORATORIES INC., et al.,<br><br>    Defendants. | Case No. 16-cv-06557-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPROVAL OF PLAN OF ALLOCATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. § 78U-4(A)(4)**<br><br>Re: Dkt. No. 127 |

Pending before the Court is Plaintiffs' unopposed motion for final approval of class action settlement and allocation and for enhancement awards and attorneys' fees and expenses. Dkt. No. 127. The Court held a hearing on the motion on March 31, 2022, and, at the Court's request, Plaintiffs' counsel submitted supplemental declarations on April 1, 2022. Dkt. Nos. 131–132. For the reasons set forth below, the Court **GRANTS** the motion.

## I. BACKGROUND

### A. Factual and Procedural Background

New York Hotel Trades Council ("Lead Plaintiff") asserts violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 against Impax Laboratories Inc. ("Impax"), George Wilkinson, Larry Hsu, Bryan Reasons, and Carole Ben-Maimon (collectively, "Defendants"). The Court dismissed Plaintiffs' first amended complaint with leave to amend, Dkt. No. 66, after which Lead Plaintiff filed a second amended complaint ("SAC") asserting the same claims. Dkt. No. 71. On August 12, 2019, the Court dismissed the SAC with prejudice, and Lead Plaintiff appealed. Dkt. Nos. 86–87.

After the Ninth Circuit affirmed in part and reversed in part the Court's dismissal,

1  Defendants moved for rehearing and rehearing en banc. Dkt. No. 89; App. Dkt. No. 42. The
2  Sheet Metal Workers' Fund ("Class Representative") also jointly moved with Lead Plaintiff to
3  allow the Sheet Metal Workers' Fund to intervene as an additional named plaintiff. App. Dkt. No.
4  43. In March 2021, the Ninth Circuit denied the petition for rehearing and denied the motion to
5  intervene "without prejudice to seek leave to intervene on remand." App. Dkt. No. 47–48; *see*
6  *also* Dkt. No. 90.

In April 2021, Lead Plaintiff and Class Representative (collectively, "Named Plaintiffs") renewed the intervention motion with this Court. Dkt. No. 93. Defendants also moved to dismiss the SAC for lack of subject-matter jurisdiction. Dkt. No. 96. The Court took the motion to intervene, Dkt. No. 93, and the motion to dismiss the SAC, Dkt. No. 96, under submission. Dkt. No. 108.

In June 2021, the parties notified the Court that they accepted a mediator's proposal to settle the action for $33 million and asked the Court to defer ruling on the motions to intervene and to dismiss. Dkt. No. 109. In July 2021, Lead Plaintiff filed an unopposed motion for preliminary approval of a proposed settlement. Dkt. No. 110. The Court held a hearing on the motion in October 2021, *see* Dkt. No. 116, after which the parties submitted an amended stipulation of settlement and a supplemental brief. *See* Dkt. No. 118. After the Court expressed concern regarding the proposed *cy pres* recipient, the parties submitted a second amended stipulation of settlement ("SASS") and a second supplemental brief. *See* Dkt. Nos. 118, at 1; 120; 121. In November 2021, the Court granted preliminary approval of the settlement and directed the parties to finalize and implement the proposed notice plan. *See* Dkt. No. 122 (Order Granting Preliminary Approval of Settlement) ("Order Granting Prelim. Approval"), at 18, 21–22.

### B. Settlement Agreement

The key terms of the SASS, Dkt. No. 121-1, Ex. A, are as follows:

#### i. Class Definitions

The Settlement Class is defined as "all Persons that purchased or acquired Impax common stock or 2% Convertible Senior Notes between February 20, 2014 and August 9, 2016, inclusive." SASS ¶ 1.4.

United States District Court
Northern District of California

2

### ii. Settlement Benefits

<u>Settlement Benefits</u>: Defendants will pay $33,000,000 (the "Settlement Amount") to a Settlement Fund. *Id.* ¶¶ 1.18, 1.33–.34, 5.9. After deduction of all taxes, administrative costs, litigation expenses, attorneys' fees, and any incentive award, the Net Settlement Fund will be distributed to the Class Members under the Plan of Allocation. *Id.* ¶¶ 1.18, 5.4; *see also* Dkt. No. 121-1, Ex. A-1 (Notice of Pendency and Proposed Settlement of Class Action) ("Proposed Notice") ¶¶ 28–43. Defendants will not have a reversionary interest in the Net Settlement Fund. SASS ¶ 5.9.

According to the Plan of Allocation, at least 95% of the Net Settlement Fund will be allocated to Impax common stock and no more than 5% of the Net Settlement Fund will be allocated to 2% Convertible Senior Notes. Proposed Notice ¶ 30. The Net Settlement Fund will be distributed on a *pro rata* basis based on the relative size of all the authorized claimants' Recognized Claims. *Id.* ¶ 36. A claimant's Recognized Claim is calulated using formulas in the Plan of Allocation that estimate, based on when a claimant purchased and sold stock, the decline in value that Plaintiffs allege resulted from Defendants' false statements and material omissions. *Id.* ¶¶ 32, 35. To calculate each claimant's share (the "Distribution Amount"), the claimant's Recognized Claim is divided by the total sum of all Recognized Claims, and this percentage is multiplied by the total amount in the Net Settlement Fund. *Id.* If any claimant's Distribution Amount calculates out to be less than $10.00, the claimant's Distribution Amount will be increased to $10.00. *Id.*

If, after the initial distribution and payment of fees and expenses, Lead Counsel—in consultation with the third-party settlement administrator (the "Claims Administrator")—determines that it is cost effective to make a further distribution, the Claims Administrator will redistribute the remaining funds. *Id.* ¶ 41. To receive a redistribution payment, a claimant must have cashed their initial distribution check. *Id.* The redistribution process will repeat until it is no longer cost effective. *Id.*

<u>*Cy Pres* Distribution</u>: If (1) any portion of the Net Settlement Fund remains following distribution and any redistributions; and (2) in the discretion of Lead Counsel, in consultation with

3

Claims Administrator, the remainder is not cost effective or efficient to redistribute to the Class, then the remaining funds will be contributed to the Investor Protection Trust. *Id.*; *see also* SASS ¶ 5.9. The Investor Protection Trust is a 501(c)(3) non-profit dedicated to educating and protecting investors. *See* Dkt. No. 127 (Lead Plaintiff's Notice of Motion and Motion for (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Awards to Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4)) ("Mot. for Final Approval"), at 18.[1] The Court preliminarily found a sufficient nexus between the Class and the Investor Protection Trust, which shares the Class Members' interests in protecting investors and preventing fraud. *See* Order Granting Prelim. Approval, at 15. The Court continues to find a sufficient nexus, and this Order incorporates by reference the Court's prior analysis regarding the *cy pres* distribution as set forth in the Order Granting Preliminary Approval. *Id.*

### iii.    Release

Under the SASS, all "Released Claims" and all "Released Defendants' Claims" against all "Released Parties" shall be released. SASS ¶¶ 4.1–.4. "Released Claims" are defined as follows:

> [A]ny and all claims, rights, liabilities, and causes of action of every nature and description, including both known claims and Unknown Claims, whether contingent or absolute, mature or unmature, discoverable or undiscoverable, liquidated or unliquidated, accrued or unaccrued, including those that are concealed or hidden, regardless of legal or equitable theory, that Lead Plaintiff or any other member(s) of the Class asserted or could have asserted in any forum that both (i) arise out of, are based upon, or are related in any way to the allegations, transactions, facts, events, matters, occurrences, disclosures, statements, representations, or omissions referred to in the Action, and (ii) relate to the purchase or acquisition of Impax common stock or 2% Convertible Senior Notes by the Class during the Class Period. Notwithstanding the foregoing, "Released Claims" does not include claims relating to the enforcement of the Settlement.

*Id.* ¶ 1.27. "Released Defendants' Claims" are defined as follows:

> [A]ll claims and causes of action of every nature and description, including both known claims and Unknown Claims (as defined below), whether arising under federal, state, common or foreign law, or any other law, that Defendants could have asserted against any of the Released Plaintiff Parties, including Lead Counsel, that arise out

---

[1] All citations to the Motion for Final Approval refer to the page numbers of the filed .PDF.

4

> of or relate in any way to the institution, prosecution, or settlement of the claims in the Action, except for claims relating to the enforcement of the Settlement.

*Id.* ¶ 1.29. The "Released Parties" are "Released Defendant Parties" and "Released Plaintiff Parties." *Id.* ¶ 1.30. "Released Defendant Parties" are defined as Defendants and each and all of their related persons. *Id.* ¶¶ 1.26, 1.28. "Released Plaintiff Parties" include:

> the Plaintiffs, each and every Class Member, Plaintiffs' Counsel, and each of their respective past or present trustees, officers, directors, partners, employees, contractors, auditors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. Released Plaintiff Parties does not include any Person who timely and validly seeks exclusion from the Class.

*Id.* ¶ 1.31.

### iv. Class Notice and Procedure

Notice: The Claims Administrator mailed 49,620 notices of the settlement and claim forms ("Notice Packets") to potential Class Members. Dkt. No. 129-4 (Supplemental Declaration of Luiggy Segura Regarding (a) Notice Dissemination; (b) Publication/Transmission of Summary Notice; and (c) Requests for Exclusion Received to Date) ("Segura Suppl. Decl.") ¶ 4. To help identify the class members, Defendants provided the Claims Administrator with lists containing the names, addresses, and, if available, email addresses of Class Members to the extent such lists were reasonably available from Impax's stock transfer agent. Dkt. No. 127-4 (Declaration of Luiggy Segura Regarding (a) Notice Dissemination; (b) Publication/Transmission of Summary Notice; and (c) Requests for Exclusion Received to Date) ("Segura Decl.") ¶¶ 3–4. The Claims Administrator also notified banks, brokers, and other nominees who may hold the securities at issue on behalf of a beneficial purchaser, asking them to either forward the Notice Packets or to provide the potential class members' names and contact information. *Id.* ¶¶ 5, 7. In addition, the Claims Administrator published a summary notice in *The Wall Street Journal* and over *PR Newswire*, *id.* ¶ 12; designed and maintained a website with information for potential class

members, *id.* ¶ 14; established a toll-free telephone number and email address to answer questions about the settlement, *id.* ¶ 13; and sent the Depository Trust Company a Notice Packet to publish on its Legal Notice System, *id.* ¶ 8.

<u>Opt-Out Procedure</u>: The Notice informed Class Members that the Claims Administrator must receive any requests for exclusion by March 4, 2022. Segura Suppl. Decl. ¶ 7. Any Settlement Class member who did not submit a timely written request for exclusion is bound by the terms of the SASS and by any judgment or determination affecting the Settlement Class. *See* SASS ¶ 5.7. A Class Member could opt out by submitting, via first-class mail, a valid and timely written request to the Claims Administrator that included the number of impacted shares the Class Member owned. Proposed Notice ¶ 56. Class Members were further informed that if they opted out they would not receive any benefit from the Settlement but would retain the right to be a part of any other lawsuit against any of the Released Defendant Parties with respect to any of the Released Claims. *Id.* ¶ 54.

### v. Enhancement Awards

The SASS allows Plaintiffs' counsel to seek an award to pay the costs and expenses of Named Plaintiffs. SASS ¶¶ 1.11, 3.2. Plaintiffs' counsel seeks awards of $9,462.50 for Lead Plaintiff and $1,176.10 for Class Representative. Mot. for Final Approval, at 2–4, 45–46; *see also* Dkt. No. 127-2 (Declaration of John Heim in Support of Lead Plaintiff's Motion for Final Approval of Settlement) ("Heim Decl."); Dkt. No. 127-3 (Declaration of Vernon Shaffer in Support of Lead Plaintiff's Motion for Final Approval of Settlement) ("Shaffer Decl.").

### vi. Attorneys' Fees and Costs

The SASS allows Plaintiffs' Counsel to seek an attorneys' fees award and reimbursement of expenses to be paid from the Settlement Fund. SASS at ¶¶ 6.1–.2. Plaintiffs' Counsel moves for $9,900,000 in attorneys' fees and for $176,501.78 in expenses, plus interest on both amounts. *See* Mot. for Final Approval, at 34–45; Dkt. No. 127-1 (Declaration of Luke O. Brooks in Support of Motion for (1) Final Approval of Class Action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Awards to Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4)) ("Brooks Decl. in Supp. of Final Approval") ¶¶ 11, 13.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rules of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–22 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the Class on November 22, 2021, this Order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Order Granting Prelim. Approval, at 8–12.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). Rule 23(e)'s purpose is to protect unnamed class members from "unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008) (citation omitted).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (citations omitted) (quotation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court "may

consider some or all" of the following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Just. v. Civ. Serv. Comm'n of the City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

In addition, adequate notice is "critical" to court approval of a class settlement under Rule 23(e). *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that Class Members received adequate notice.

### a. Adequacy of Notice

The Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice and notice plan previously approved by the Court was well-implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 122, at 18–21. As of March 17, 2022, Claims Administrator JND mailed 49,620 Notice Packets to potential Class Members. Segura Suppl. Decl. ¶ 4. About 1,000 packets were initially undeliverable as addressed, but JND obtained updated address information for those potential Class Members and forwarded Notice Packets to the updated addresses. *Id.* ¶ 4 n.2. JND also fulfilled the other provisions of the Notice

8

1  Plan, such as posting documents to the settlement website, publishing the Summary Notice in *The Wall Street Journal* and *PR Newswire*, and maintaining a toll-free telephone number, at which it received 162 telephone calls as of March 17, 2022.  Segura Decl. ¶¶ 12, 14; Segura Suppl. Decl. ¶ 5.

The Claims Administrator received no requests for exclusion and no objections to the Settlement prior to the March 4 deadline.  *See id.* ¶ 8.  In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the Class Members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Difficulties and risks in litigating weigh in favor of approving a class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the risks Plaintiffs face by continuing to litigate the case.  The most imminent threat to Plaintiffs' case, according to Plaintiffs' counsel, is Defendants' pending motion to dismiss for lack of subject-matter jurisdiction.  *See* Brooks Decl. in Supp. of Final Approval ¶ 37.  Plaintiffs' counsel also notes that even if the Court denied that motion, Defendant could move to dismiss on other grounds.  *Id.* ¶ 38.  Plaintiffs' counsel asserts that other risks include prevailing on any motion to de-certify the Class, on motions for summary judgment, and at trial.  *Id.* ¶ 39.  More specifically, Plaintiffs explain the difficulty of needing to prove a "case within a case"—that is, the falsity of Defendants' public statements relating to Defendants' alleged anti-competitive conduct—to establish liability.  *Id.* ¶¶ 39–42.  Plaintiffs also point to the difficulty of proving scienter and

9

1   materiality with respect to the allegedly false statements, and then the difficulty of proving
2   damages for a class of plaintiffs that purchased, sold, or held impacted stock at different times.
3   *See* Mot. for Final Approval, at 14–16.  Lastly, Plaintiffs express concern about any recovery
4   being significantly delayed or reduced as a result of continuing the litigation.  *Id.* at 43–44.
5   Through this settlement, Plaintiffs have ensured a favorable recovery for the class, and the Court
6   finds that these factors weigh in favor of approving the settlement.

## 2.  Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  Because the parties provisionally certified the Class for the purposes of settlement, Plaintiffs avoided the risks inherent in certifying and then maintaining class status throughout the litigation.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (class certification orders are "inherently tentative"); *Rodriguez*, 563 F.3d at 966 ("A district court may decertify a class at any time."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]here is no guarantee the certification would survive through trial . . . .").  As Plaintiffs note, there is always a risk of decertification—especially when, as here, Plaintiffs must overcome causation and damages defenses.  *See* Mot. for Final Approval, at 32.  Considering those risks, the Court finds that this factor weighs slightly in favor of approval.

## 3.  Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval.  To evaluate whether a settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *8 (N.D. Cal. Nov. 21, 2018).  The expected Net Settlement Fund is $22,567,419.  *See* Dkt. No. 132-1 (Declaration of Luke O. Brooks Regarding Number of Claims Received, Expected Net Settlement Fund, and Range of Average Claimant Distribution Amounts) ("Brooks Decl. of Expected Claims") ¶ 4.  Plaintiffs' counsel estimates that the Settlement Fund represents approximately 12.5% of estimated damages recoverable at trial.  *See* Brooks Decl. in Supp. of Final Approval ¶ 53.  Plaintiffs' counsel further estimates that if between forty and sixty percent of the 12,816 claims are approved, the Distribution Amount for

10

each of those approved claims will range from $2,934 to $4,401.  *Id.* ¶ 5.

This recovery is in line with comparable securities class action settlements.  *See, e.g.*, *Azar v. Blount Int'l, Inc.*, No. 3:16-cv-0483, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement fund amount of 4.63 to 7.65% of the class's total estimated damages); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *2 n.2 (N.D. Cal. May 10, 2019) (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions").  Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Just.*, 688 F.2d at 628.  The Court thus finds this factor weighing in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Plaintiffs' Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Though the parties have yet to begin formal discovery, the parties reached settlement after more than four years of litigation in both trial and appellate courts, extensive fact investigation, and mediation sessions with the Hon. Layn R. Phillips (Ret.).  *See* Brooks Decl. in Supp. of Final Approval ¶¶ 5–6, 9.  The Court is persuaded that Plaintiffs' counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, such that the understanding allowed them to assess the likelihood of success on the merits.  This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel.  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation . . . ."  *Rodriguez*, 563 F.3d at 967 (citation omitted) (quotation omitted).  The Court has previously evaluated Plaintiffs' counsel's qualifications and experience and concluded that Plaintiffs' counsel is qualified to represent the Class's interests in this action.  *See* Dkt. Nos. 29, 122.  Plaintiffs' counsel believes the Settlement is fair, reasonable, adequate, and in the Class's best interest.  *See* Mot. for Final Approval, at 30; Brooks Decl. in

Supp. of Final Approval ¶ 36.

The Court recognizes, however, that courts have diverged on the weight to assign counsels' opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements . . . ."). This factor's impact, therefore, is slight but favors approval.

### 6. Reaction of Class Members

Finally, the reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class Members were advised of the requirements to object to or opt out of the settlement by March 4, 2022. *See* Proposed Notice. Claims Administrator JND received no objections to the Settlement and no requests for exclusion from the Class as of March 24, 2022. Dkt. No. 129, at 1. The Court finds that the absence of objections indicates strong support among the Class Members and weighs in favor of approval. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ'g Corp.*, No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\*   \*   \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Class Members received adequate notice.[2] Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

---

[2] The Court scrutinized the Settlement for "evidence of collusion or other conflicts of interest" and found none. *See* Order Granting Prelim. Approval, at 14–15.; *see also Roes*, 944 F.3d at 1049. Because no facts that would affect the Court's analysis have changed since then, this Order incorporates by reference its prior analysis.

United States District Court
Northern District of California

### B. Attorneys' Fees, Costs, and Expenses, and Named Plaintiffs' Enhancement Awards

In its unopposed motion, Plaintiffs' counsel asks the Court to approve awards of $9,900,000 in attorneys' fees, $176,501.78 in litigation expenses, and $10,638.60 in enhancement awards. *See* Mot. for Final Approval, at 34–46; Brooks Decl. in Supp. of Final Approval ¶¶ 11, 13–14. Named Plaintiffs approved these requests. *See* Heim Decl. ¶ 7; Shaffer Decl. ¶ 7.

#### i. Attorneys' Fees

##### a. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The district court has discretion over the amount of attorneys' fees it awards. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). In a common fund case such as this one, the Court also has discretion to choose either the lodestar method or the percentage-of-the-fund method to calculate reasonable attorneys' fees. *Id.* at 1047.

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citation omitted). "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* (citation omitted). And typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "[O]ther evidence

13

of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Under the percentage-of-the-fund method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

Although the choice between lodestar and percentage calculation depends on the circumstances, either method may have its place in determining reasonable compensation for creating a common fund. *Six Mexican Workers*, 904 F.2d at 1311 (citation omitted). To guard against unreasonable results, the Ninth Circuit has encouraged district courts to cross-check any calculations under one method against those under the other method. *Vizcaino*, 290 F.3d at 1050–51.

### b. Analysis

Plaintiffs' counsel asks the Court to approve an award of attorneys' fees of $9,900,000. *See* Brooks Decl. in Supp. of Final Approval ¶ 11. The Court finds this amount reasonable.

Under the percentage-of-the-fund method, Plaintiffs' Counsel's request for thirty percent of the Settlement Fund is above this circuit's twenty-five percent "benchmark" award. The Court considers the reasonableness of the percentage requested in light of the factors enumerated by the Ninth Circuit, with the 25% award as a starting point. That court has identified several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

The first and "most critical factor [in determining an attorneys' fee] is the degree of

success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  As previously discussed, Plaintiffs' counsel achieved significant results for the Class by obtaining a Settlement Fund of $33,000,000, which Plaintiffs' counsel estimates is 12.5% of the damages recoverable at trial. *See* Brooks Decl. in Supp. of Final Approval ¶ 53.  This is a significant recovery in the securities class action context. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 2077847, at *2 n.2 (noting that "the median settlement recovery from 2009 to 2017 was only five percent of damages in securities class actions").  Moreover, no Class Member objected to the adequacy of the settlement amount.  The Court agrees that this represents an excellent result for class members.

This recovery must also be considered in light of the significant risks that Plaintiffs would face by further litigating this case.  As discussed above in section II.A.ii.b.1., Plaintiffs essentially would have to prove a "case within a case" and then show class-wide causation and damages over an extended period of time.  This factor therefore weighs in favor of the requested award.

In achieving this outcome, Plaintiffs' counsel litigated this case skillfully and professionally. *See* Dkt. No. 89.  In addition to litigating multiple rounds of motions before the Court, Plaintiffs' counsel successfully appealed a dismissal of the entire case with prejudice. *See* Dkt. No. 89.  And Plaintiffs' counsel assumed substantial risk and invested substantial time in litigating a complex securities fraud case on a contingency-fee basis and incurring costs without the guarantee of payment for its efforts. *See id.* at 37–42; Brooks Decl. in Supp. of Final Approval ¶¶ 11, 57.  These factors weigh in favor of the award.

Cross-checking with the lodestar method, the Court notes that Plaintiffs' counsel's hourly rates range from $760 to $1,325 for partners, $895 to $1,150 for counsel, and $175 to $520 for associates. Dkt. No. 127-5 (Declaration of Luke O. Brooks Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses) ("Brooks Decl. in Supp. of Award of Attorneys' Fees and Expenses"), Ex. A.  The Court finds Plaintiffs' Counsel's billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates ranging from $650 to

$1,250 for partners or senior counsel and from $400 to $650 for associates as reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. March 17, 2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals as reasonable). As of January 2022, Plaintiffs' attorneys and paraprofessionals have spent 4,718 hours on the case, generating an aggregate lodestar of $3,815,664.75. Brooks Decl. in Supp. of Award of Attorneys' Fees and Expenses, Ex. A.

Plaintiffs' counsel's fee request of $9,900,000, plus interest, amounts to approximately 2.6 times their lodestar. In similar cases, courts in this Circuit have approved multipliers ranging from 1.0 to 4.0. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range). Plaintiffs' counsel also cites numerous decisions from this district approving multipliers ranging from 2.5 to 4.3. *See* Mot. for Final Approval, at 43–44. In light of these cases, the risks of litigation, the financial burden assumed, and the favorable settlement, Plaintiffs' counsel's request is reasonable and the Court **GRANTS** attorneys' fees of $9,900,000, plus interest.

### ii. Costs and Expenses

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation costs from that fund. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994). Plaintiffs' counsel is accordingly entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

The Court finds Plaintiffs' counsel's request for reimbursement of $176,501.78 in litigation expenses to be reasonable. *See* Mot. for Final Approval, at 44–45. The incurred costs include consultant fees, mediation fees, filing fees, process of service fees, electronic research, postage, and travel. *See* Brooks Decl. in Supp. of Award of Attorneys' Fees and Expenses, Ex. B. These expenses reflect expenses routinely charged to paying clients. *See, e.g.*, *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (approving expense reimbursements for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class

action notices; 8) experts, consultants, and investigators; and 9) mediation fees"). The Court finds that these costs were reasonably incurred and **GRANTS** the motion for expenses in the amount of $176,501.78, plus interest.

### iii. Enhancement Awards

Plaintiffs' Counsel requests enhancement awards of $9,462.50 for Lead Plaintiff New York Hotel Trades Council and $1,176.10 for Class Representative Sheet Metal Workers' Fund. *See* Mot. for Final Approval, at 45–46; Heim Decl. ¶ 6; Shaffer Decl. ¶ 7;

Under the PSLRA, a class representative may seek an award of reasonable costs and expenses, including lost wages, directly relating to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); *see also Staton*, 327 F.3d at 977 (holding that named plaintiffs are eligible for "reasonable incentive payments"); *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). These payments are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* (quotation omitted). The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d at 977 (quotation omitted).

Named Plaintiffs submitted declarations describing the significant time they spent working with counsel on litigation preparation by, among other items, participating in the litigation and settlement processes. *See* Heim Decl. ¶¶ 3–4, 6; Shaffer Decl. ¶¶ 3, 6. New York Hotel Trades Council's Chief Financial Officers spent approximately thirty-one hours working on this case, reviewing documents, providing input into the case's prosecution, and engaging in meetings,

phone conferences, and correspondence with Lead Counsel.  *See* Heim Decl. ¶¶ 3, 6.  It requests an hourly rate of $302 for Mr. Heim and $310 for Mr. Veras to compensate Lead Plaintiff for the time spent working on the case.  *Id.* ¶ 6.  Sheet Metal Workers' Fund incurred $604.75 in unreimbursed expenses, and the Fund's Executive Director spent five hours working on this case. Shaffer Decl. ¶ 6.  It requests that it be compensated for its expenses and for the time the Fund's Executive Director spent on the case, at a rate of $114.27 an hour.

The Court finds that Lead Plaintiff added substantial value to this case, and that Class Representative added value as well.  In addition, the requested amounts are not disproportionate given the estimated recovery per claim of between approximately $2,900 and $4,400.  Brooks Decl. of Expected Claims at ¶ 5.  After reviewing Lead Plaintiff's and Class Representative's declarations, and considering the circumstances of this lengthy and hard-fought case, the Court finds that the requested service awards are reasonable to compensate them for their costs and expenses.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** Plaintiffs' Motion for (1) Final Approval of Class action Settlement; (2) Approval of Plan of Allocation; (3) Award of Attorneys' Fees and Expenses; and (4) Awards to Plaintiffs Pursuant to 15 U.S.C. § 78u-4(a)(4).  The Court approves the Settlement Amount of $33,000,000.  The Court also approves (1) Plaintiffs' Counsel's request for an award of attorneys' fees in the amount of $9,900,000, plus interest; (2) Plaintiffs' Counsel's request for payment of costs incurred in the amount of $176,501.78, plus interest; and (3) Lead Plaintiff's $9,462,50 enhancement award and Class Representative's $1,176.10 enhancement award.

The parties and Claims Administrator are directed to implement this Final Order and the SASS in accordance with the terms of the SASS.  The parties are further directed to file a short stipulated final judgment of two pages or less within 7 days from the date of this Order.  The judgment need not, and should not, repeat the analysis in this Order.

Within 21 days after the distribution of the settlement funds, the parties must file a Post-Distribution Accounting, which provides the following information:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to the *cy pres* recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated: 7/15/2022

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge